OPINION OF THE COURT
Stanley L. Sklar, J.
This motion presents the novel issue of whether a plaintiff’s *625 time to file a notice of claim against the New York City Health and Hospitals Corporation (HHC) can be extended by continuous treatment rendered by HHC after the plaintiff has already served HHC with a summons and complaint. I hold that it cannot.
HHC moves pursuant to CPLR 3211 (a) (7) and 3212 for an order dismissing the complaint in that plaintiff has failed to comply with the notice of claim provisions of McKinney’s Unconsolidated Laws of NY § 7401 (New York City Health and Hospitals Corporation Act § 20; L 1969, ch 1016, as amended) and General Municipal Law § 50-e. Plaintiff cross-moves for an order deeming the notice of claim served on February 22, 1991 properly served or, alternatively, deeming the notice of claim served on July 9, 1993 served nunc pro tune, and granting leave to amend the complaint accordingly.
This is a medical malpractice and/or negligence action brought against HHC, stemming from the treatment and care received by plaintiff while he was hospitalized from September 29, 1990 to December 13, 1990 at Metropolitan Hospital for a head injury caused by a fall.
Reyes was discharged from Metropolitan on December 13, 1990. The discharge note indicated that Reyes had been disoriented, confused and had had some hallucinations during his hospitalization but that his mental status had improved. Although the note indicated that Reyes was "alert and oriented x3,” 24-hour supervision after discharge was recommended for his safety. Reyes was to be followed up with rehabilitation in one month and psychiatric visits in a week.
On January 16, 1991 Reyes was seen as an outpatient at the hospital medical clinic where he complained of a decrease in his sense of smell and also of "some recent memory impairment.” He was told to return to the clinic. The hospital entry for January 24, 1991 indicated that Reyes had total amnesia with respect to the incident that initially led to his hospitalization.
On February 22, 1991 Reyes’ counsel served a notice of claim on Metropolitan Hospital, but not on HHC, alleging that "its personnel and medical staff committed medical malpractice in its care and treatment.” Specifically the notice alleged with respect to the time, place and manner in which the claim arose:
"On September 29, 1990 through and including December 12, 1990, during hospitalization of the claimant at Metrópoli *626 tan Hospital Center. Said hospital, its personnel and medical staff committed medical malpractice in its care and treatment of the claimant, including failing to properly medicate, failing to properly restrain and otherwise treat and care for said claimant; in that claimant was caused to fall off his hospital bed; in that claimant was allowed and/or permitted to wander off the hospital grounds, all of which caused claimant to sustain serious and permanent personal injuries.” The injuries alleged in the notice of claim were "[ajmongst other things * * * a fractured skull, severe headaches, spiked fevers, and became disoriented.”
Reyes returned to the hospital as an outpatient on May 17, July 1 and 19, and October 8 for a variety of tests and consultations related to the head injuries treated during his earlier hospitalization.
The instant action was commenced against HHC on or about November 27, 1991. It is not clear whether any attempt was made to serve Metropolitan, which is listed as a defendant in the complaint. HHC served an answer on or about December 17, 1991.
Notwithstanding the lawsuit, Reyes thereafter returned to the hospital as an outpatient in November and December 1991, and January and February 1992 with complaints related to the condition treated during the prior hospitalization. Various tests were performed and consultations were obtained.
In April 1992 Reyes was seen in a hospital clinic for complaints of anosmia (loss of smell) and loss of memory. He was noted to have "dementia P head trauma,” was given B12 folate and was told to return in three months. A May 1992 report of an EEG performed at the hospital showed a normal EEG. A July 2, 1992 neurology clinic note indicated that Reyes complained of anosmia and memory difficulties. The plan on that date was to refer him to Mt. Sinai for cognitive rehabilitation.
About one year later, on June 16, 1993, Reyes appeared at Metropolitan’s medical clinic "for a routine follow-up.” No treatment, examination or complaints relevant to his head trauma are evident from the hospital record of that date. On or about July 7, 1993 defense counsel informed Reyes’ attorney that HHC intended to move to dismiss the complaint for failure to serve a notice of claim on HHC as opposed to Metropolitan. Then, on July 9, 1993, Reyes’ counsel served a notice of claim on HHC which was similar but not identical to *627 the notice of claim served on Metropolitan. That notice of claim recited with respect to when, where and how the claim arose: "From September 9 [sic], 1990 through and including December 12, 1990, during claimant’s care and treatment at Metropolitan Hospital Center, when said hospital, its personnel and medical staff committed medical malpractice in its care and treatment of the claimant, including failing to properly medicate, restrain and diagnose the claimant’s true condition; in permitting claimant to fall off his hospital bed and elope from the hospital grounds, all of which caused claimant to sustain serious and permanent personal injuries for which he has been treated at said hospital continuously to date.”
On July 13, 1993 the instant motion was served and on August 9, 1993 Reyes made the instant cross motion.
Reyes presented at the hospital as an outpatient on July 29, 1993 complaining of anosmia, memory loss and dizziness since 1990. He had a CT scan performed in August of 1993 and was also seen in the neurology clinic that month.
HHC now seeks summary judgment granting dismissal of the claim against it on the ground that Reyes has failed to state a cause of action in that the complaint fails to allege compliance with a condition precedent to suit, namely that a notice of claim had been filed within 90 days of accrual of the plaintiff’s causes of action. HHC further asserts that no such timely notice has been served on it, and maintains that service of the notice of claim on Metropolitan was a nullity.
Reyes in opposition cross-moves for an order deeming the notice of claim previously served on Metropolitan on February 22, 1991 properly served on HHC or, in the alternative, "deeming the Notice of Claim served on July 9, 1993 nunc pro tune.” Plaintiff also seeks to serve an amended complaint alleging compliance with the notice of claim requirements.
Reyes asserts that the improper service on Metropolitan was excusable, that HHC will suffer no prejudice and that, because of the applicability of the continuous treatment doctrine, the Statute of Limitations had not expired with respect to his claims against HHC at the time he made the instant cross motion. Reyes further claims that the notice of claim served on July 9, 1993 was timely in light of the continuous treatment doctrine. Reyes concedes that the original notice of claim was served on the wrong entity (see, McKinney’s Uncons Laws of NY § 7385 [1]; § 7401 [New York City Health and Hospitals Corporation Act §§ 5, 20]; Brennan v City of New *628 York, 59 NY2d 791 [1983]; Ceely v New York City Health & Hosps. Corp., 162 AD2d 492 [2d Dept 1990]).
The defendants assert that the continuous treatment doctrine does not apply to any treatment rendered after service of process. They note that "[t]he doctrine rests on the premise that it is in the patient’s best interest that an ongoing course of treatment be continued, rather than interrupted by a lawsuit, because 'the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so’.” (Nykorchuck v Henriques, 78 NY2d 255, 258, citing McDermott v Torre, 56 NY2d 399, at 408.) The doctrine recognizes that a patient who has trust and confidence in his physician’s professional ability cannot reasonably be expected to question or evaluate that physician’s treatment, and was, therefore, adopted out of concern that the patient’s malpractice claims might expire while he was still receiving treatment. (Greene v Greene, 56 NY2d 86, 94 [1982]; Coyne v Bersani, 61 NY2d 939, 940 [1984].) Defendants claim that where the treatment has already been questioned and interrupted by a lawsuit there is no reason to apply beyond the date of the commencement of the lawsuit the tolling provisions of CPLR 214-a. This argument is persuasive.
The plaintiff, however, relying on Petrushansky v New York City Health & Hosps. Corp. (102 AD2d 819 [2d Dept 1984]) asserts that the toll is available notwithstanding the commencement of the action. The issue in that case was whether the continuous treatment doctrine tolled the Statute of Limitations where the patient sought treatment after service of a notice of claim but before the action had commenced. The Appellate Division, Second Department, held that it did. A review of the record on appeal in Petrushansky reveals that both parties recognized that had the case involved treatment rendered after the action had been commenced the toll would not apply. In this regard the parties cited Accardi v United States (356 F Supp 218, 222 [SD NY 1973]) in which the court opined that "the continuous treatment rule operates as a tolling provision; the victim may bring suit as soon as the alleged injury is suffered, but the running of the statute of limitations is tolled for the period during which he undergoes treatment for the injury and refrains from bringing suit” (emphasis added). Thus the holding in Petrushansky is una *629 vailing. Because the policy behind the adoption of the continuous treatment doctrine does not apply to the facts presented in the instant case, plaintiff cannot avail himself of the toll. Accordingly, plaintiff’s cross motion is denied and the action is dismissed.
[Portions of opinion omitted for purposes of publication.]